935 So.2d 752 (2006)
Michael Lane MARSHALL and Bobby W. Biscamp, Plaintiffs-Appellants
v.
Paul J. SEAGO, Mansfield Auto World, Inc., Federated Mutual Insurance Company and State Farm Mutual Automobile Insurance Company, Defendants-Appellees.
No. 41,138-CA.
Court of Appeal of Louisiana, Second Circuit.
June 28, 2006.
*753 Seale, Stover & Bisbey, by Blair A. Bisbey, for Plaintiffs Appellants, Michael L. Marshall and Bobby W. Biscamp.
Corkern & Crews, by Steven D. Crews, for Defendants Appellants, Paul J. Seago and State Farm Mutual Automobile Ins. Co.
Cook, Yancey, King & Galloway, by Sidney E. Cook, Jr., Matthew R. May, Shreveport, for Defendants Appellees, Mansfield Auto World, Inc. and Federated Mutual Ins. Co.
Before WILLIAMS, STEWART and PEATROSS, JJ.
STEWART, J.
The trial court rendered a summary judgment in favor of Mansfield Auto World, Inc. ("Auto World") and its insurer, Federated Mutual Insurance Company ("Federated"), finding no coverage under the dealership's liability policy for a test driver involved in an accident. For the reasons assigned below, the judgment of the trial court is hereby affirmed.

FACTS
On or about August 11, 2004, Michael Lane Marshall was driving a vehicle owned by his employer, Bobby W. Biscamp, along Louisiana Highway 509 in DeSoto Parish when he was involved in a collision with a vehicle being driven by Paul J. Seago. *754 Seago was test driving a vehicle owned by Auto World. Seago's grandmother, Joann Murray, was considering buying the vehicle for him. As a result of the accident, Marshall and Biscamp filed suit against Seago and his insurer, State Farm Automobile Insurance Company ("State Farm"), and Auto World and its insurer, Federated. The petition alleged negligence on the part of Seago in making an illegal U-turn, failing to yield the right of way, failing to maintain a proper lookout, failing to maintain control of his vehicle, and failing to brake properly. Auto World and Federated answered the petition with a general denial of the allegations therein.
On April 15, 2005, Auto World and Federated filed a motion for summary judgment seeking dismissal from the plaintiffs' suit. As to Auto World, the motion asserted it was not liable for the negligence of its customers while test driving its vehicles. As to Federated, the motion asserted that Seago was not an insured under its policy, because he was an Auto World customer who was otherwise covered by liability insurance that met the minimum limits required by Louisiana's omnibus coverage law. In support of the motion for summary judgment, defendants submitted a copy of the insurance policy issued by Federated to Auto World, the affidavit of Auto World's manager, copies of various correspondence between the parties' attorneys[1] and a copy of the deposition testimony of Billy Williams, the Auto World salesperson assisting Seago and Murray on the date of the accident.
The pertinent portions of the policy state:
1. WHO IS AN INSURED
a. The following are "insureds" for covered "autos":
* * *
(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
* * *
(d) Your customers, if your business is shown in the Declarations as an "auto" dealership. However, if a customer of yours:
(i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.
(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.
The affidavit of Auto World's manager, John Adams, attested to the fact that neither Murray nor Seago has ever been affiliated with Auto World as an employee, agent, or in any capacity other than as a customer on the date of the accident. Mr. Williams testified in his deposition that he was the salesman who dealt with Seago and Murray on the date of the accident. It was his understanding that the vehicle was to be purchased in Murray's name but that she was purchasing it for Seago. He *755 stated that he heard Murray and Seago discuss how she was going to buy the vehicle for him and how he was going to pay her for it.
After they had worked out the price and financing arrangements, but before any papers were signed, Seago asked to test drive the vehicle. Accordingly, Williams let them take the vehicle while he remained at the dealership to prepare the paperwork. He said that he did not ask for a copy of Seago's driver's license before letting him take the vehicle on the test drive. However, he testified that a state trooper informed him after the accident that Seago did in fact possess a valid driver's license. He testified that while it was the general policy to accompany customers on test drives, it was not uncommon for customers to take test drives without being accompanied by a salesperson.
The motion for summary judgment was opposed by plaintiffs, Marshall and Biscamp, and by co-defendants, Seago and State Farm, all of whom argued that there was a genuine issue of material fact on the issue of coverage under the Federated policy. While they did not dispute that Seago was otherwise covered by liability insurance sufficient to meet the minimum requirements under Louisiana law, they argued that Seago did not fit the definition of a "customer" to whom the exclusionary provision relied on by Federated applied. In addition to Mr. Williams' deposition, plaintiffs offered copies of the financing application allegedly signed by Murray on the date of the accident. All opponents of the motion cited Mr. Williams' deposition testimony that the car was being purchased by Murray for Seago, as evidencing that Murray was Auto World's "customer." Because Federated's policy provisions only exclude coverage for "customers" using covered autos with Auto World's permission, they argued that Seago was not a customer and was afforded coverage under the policy.
The motion came for hearing on June 13, 2005, and summary judgment was granted in favor of Auto World and Federated dismissing the plaintiffs' claims against them. An appeal was taken by co-defendants Seago and State Farm. A second appeal was taken by plaintiffs Marshall and Biscamp.

DISCUSSION
Because neither appellant assigned error to that portion of the summary judgment which dismissed plaintiffs' claims against Auto World, the propriety of the trial court's ruling in this regard is not before us. Both sets of appellants, however, did challenge the trial court's granting of summary judgment on the issue of whether Seago was an insured to whom coverage is available under Auto World's liability policy with Federated. Although in separate briefs, the appellants make the identical two-fold argument. First, they argue that a genuine issue of fact exists as to whether Seago was a "customer" to whom the exclusion from coverage in Federated's policy would apply. Second, they argue that the exclusion is against the public policy in favor of omnibus coverage by precluding coverage for permissive drivers and is, therefore, unenforceable.
In determining whether summary judgment is appropriate, appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is proper. Suire v. Lafayette City-Parish Consolidated Government, 04-1459 (La.04/12/05), 907 So.2d 37. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions and shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions *756 on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.
The mover has the initial burden of proof to show that no genuine issue of material fact exists. However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover must only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. La. C.C.P. art. 966(C)(2).
An insurance policy is an aleatory contract subject to interpretation using ordinary contract principles. Ledbetter v. Concord General Corp., 95-0809 (La.1/6/96), 665 So.2d 1166, judgment amended by 95-0809 (La.4/18/96), 671 So.2d 915. Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. Accordingly, the policy provisions cannot conflict with the statutory requirement in Louisiana of omnibus coverage in favor of any person using an insured vehicle with the permission or consent of the named insured. La. R.S. 32:900(B)(2). This provision requires that a policy insure permissive drivers in an amount sufficient to satisfy the minimum legal requirements set forth in the Compulsory Motor Vehicle Liability Security Law, La. R.S. 32:861 et seq.
When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. Broadmoor Anderson v. National Union Fire Ins. Co. of Louisiana, 40,096 (La.App. 2d Cir.9/28/05), 912 So.2d 400, writ denied, 2005-2462 (La.3/24/06), 925 So.2d 1239.
In bringing the motion for summary judgment, Federated pointed out that its policy excludes from the definition of "insureds" any customer of the dealership, except to the extent that the customer is uninsured or underinsured by law. As noted above, the parties opposing the motion for summary judgment do not contest that Seago was otherwise insured in the minimum amount required by Louisiana law. They rely entirely on the proposition that Seago was not a "customer" of Auto World.
Relying on a definition of customer meaning one who pays for goods or services, the opponents to the motion for summary judgment all argue that Seago's grandmother was in fact the customer as evidenced by the facts that the vehicle was going to be in her name, that she had signed the financing application, and that she was going to be responsible, as far as Auto World was concerned, for payment. The appellants also cite Murray's statement in the presence of the salesperson that she was buying the car for Seago as a conclusive admission that Murray, not Seago, was the customer of Autoworld. We disagree.
If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. See La. C.C. art. 2046; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. The interpretation of such a contract is nothing more than a determination of the common intent *757 of the parties, with courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning. La. Civ.Code arts. 2045, 2047; See e.g., Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94), 630 So.2d 759. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. Further, words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048.
Murray's status as a customer of Auto World on the date in question is unassailable. However, we do not agree that Seago was not also a customer simply because he was not going to be the contracting party in the purchase of the truck. The word "customer" is neither a term of art nor a technical term. Therefore, it should be given its generally prevailing meaning. The interpretation suggested by the opponents to summary judgment leads to the absurd consequence that only test drivers who intend to "pay for" or "buy" the vehicle would be excluded from coverage, while those test drivers who are the intended recipient of the vehicle but who will not be its titled owner or who test drive a vehicle before deciding whether to purchase are provided coverage. We do not discern, nor do the appellants posit, any logical reason for such an interpretation. The exclusionary provision in the contract is clearly intended to exclude coverage for those members of the public whom the dealership permits to drive its vehicles in the ordinary course of trying to make a sale. This interpretation clearly suits the generally prevailing meaning of the term customer.
It is undisputed that Seago was at Auto World on the date in question to look for a vehicle, which his grandmother had agreed to assist him with purchasing. Mr. Williams' deposition testimony clearly indicates his understanding that the vehicle was being purchased for Seago even though his grandmother was lending her name, and presumably her credit, to the purchase. Under these circumstances, we find that Seago qualifies as a "customer" as that term is used in Federated's policy.
As to the question of whether the law permits the insurer to limit its coverage for permissive drivers in this way, our holding in Goodwin v. Western Heritage Ins., Co., 38,836 (La.App. 2d Cir.8/18/04), 880 So.2d 985, writ denied, 2004-2320 (La.11/24/04), 888 So.2d 231, controls. In Goodwin, supra, we held that an identical limitation of coverage was effective and not violative of the public policy mandating minimum liability coverage. Here, as in Goodwin, supra, the policy specifies that it provides liability coverage when the customer's insurance is inadequate to satisfy the minimum requirements of our compulsory or financial responsibility law. As such, the policy complies with the minimum standard required by the law, and thus, does not violate public policy.
Appellants' claim that Goodwin is distinguishable on its facts is without merit. While it is true that the negligent driver therein was the customer's permittee and not the customer, our opinion treated the two as one and the same. Therefore, our conclusion that such an exclusion does not violate public policy is unaffected by that distinction.
The issue of coverage provided by an insurance contract may be resolved by summary judgment when the evidence supporting the motion does not offer any other reasonable interpretation of the policy. *758 Goodwin, supra. Here, there is no genuine issue of material fact for trial. The evidence offered supports no reasonable interpretation other than that the policy excludes coverage for customers such as Seago under the facts of this case.

CONCLUSION
For the foregoing reasons, the summary judgment is hereby affirmed. Costs of this appeal are to be borne equally by Michael Lane Marshall, Bobby W. Biscamp, Paul J. Seago, and State Farm Mutual Automobile Insurance Company.
AFFIRMED.
NOTES
[1] This correspondence was purportedly submitted to prove Seago's status as a customer of Auto World based on representations made therein by the attorney for Seago and State Farm. Because such correspondence does not constitute competent summary judgment evidence, it was not relied on by this Court in the disposition of this appeal and, therefore, any elaboration on its content is not required.